UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALSENY BEN BANGOURA,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
THE ARMY,

    Defendant.

Civil Action No.  05-0311
DAR

**MEMORANDUM OPINION**

In this action, Alseny Ben Bangoura[1] ("Plaintiff"), pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, challenges the responses of the United States

Department of the Army ("Defendant") to his FOIA requests.  Pending for determination by the

undersigned United States Magistrate Judge are Defendant's Motion to Dismiss or in the

Alternative for Summary Judgment (Document No. 23) and Plaintiff's Motion for Summary

Judgment (Document No. 41).

By an order entered on March 31, 2009 upon consideration of the motions; the

memoranda in support thereof and in opposition thereto, and the entire record herein,

---

[1]  The record in this case contained varying spellings of Plaintiff's first name.  *Compare* Complaint for
Declaratory and Injunctive Relief ("Complaint") (Document No. 1) at 1, *with id*. ¶ 1, *and* Amended Complaint for
Declaratory and Injunctive Relief ("Amended Complaint") (Document No. 22) at 1, *and* Plaintiff Alseny Ben
Bangoura's Motion for Summary Judgment ("Plaintiff's Motion") (Document No. 41) at 1.  The undersigned
identified Plaintiff herein using the spelling contained in the caption of the Second Amended Complaint.  *See* Second
Amended Complaint for Declaratory and Injunctive Relief ("Second Amended Complaint") (Document No. 37) at 1.

Bangoura v. United States Department of the Army                                    2

Defendant's motion to dismiss or in the alternative for summary judgment was granted and

Plaintiff's motion for summary judgment was denied.  The findings of fact and conclusions of

law in support of said order follow.


## I.  BACKGROUND

Plaintiff filed the instant action seeking an order, pursuant to the FOIA, for the

"production of any and all materials and information within the possession of the Military Police

Unit of the Military District of Washington ("Military Police Unit"), regarding [Plaintiff's] arrest

and detention . . . on October 28, 2004 at . . . the State Department Federal Credit Union in . . .

Washington, D.C."  Second Amended Complaint ¶¶ 1-2, 5.  Plaintiff sought documents that

included "witness interviews at the credit union and any base banning orders issued by the Police

unit."  *Id*. ¶ 2.  In his Second Amended Complaint, Plaintiff alleged that on November 15, 2004,

his attorney sent a FOIA request "to the Military Police Unit of the Military District of

Washington seeking the release of any and all materials and information within the possession of

the Military Police regarding [his] arrest[.]"  *Id*. ¶ 41.  Plaintiff further alleged that he did not

receive any materials in response to his November 15 request, and that, he sent a second FOIA

request on December 13, 2004.  *Id*. ¶¶ 41- 42.  On August 18, 2005, more than six months after

Plaintiff initiated this litigation, the United States Army Crime Records Center ("USARC")

produced a five-page "report" with redactions pertaining to Plaintiff's detention.  *See id.* ¶ 51.

Plaintiff alleged that on September 15, 2005, "a third information request was submitted to the

USARC seeking records of the call to the Military Police made by the bank manager, copies of

the allegedly fraudulent checks and information regarding the arrest of Mr. John[,] [Plaintiff's

Bangoura v. United States Department of the Army                                      3

landlord][.]" *Id*. ¶ 54.  On October 18, 2005, Plaintiff received copies of the alleged fraudulent

checks, but did not receive any documents with respect to "Mr. John's arrest or Mr. John's

presence as a witness to [Plaintiff's] alleged arrest and detention at the State Department Federal

Credit Union." *Id*. ¶ 57.  Plaintiff alleged that on February 15, 2006, during a status conference,

he received a three-page document "consisting of the notes of [Plaintiff's] interrogation" from

"[a] representative of the Department of Justice[.]" *Id*. ¶ 62.  Plaintiff further alleged that on

March 14, 2006, he sent "another letter requesting further documentation from the USARC[.]"

*Id*. ¶ 64.  Plaintiff alleged that USARC located and produced the "'Daily Staff Journal or Duty

Officers Log' and a CID [("Criminal Investigation Command")] 'Agent's Activity Summary.'"

*Id*. ¶¶ 65 - 66.

As relief, Plaintiff, in his second amended complaint requested the court to "[d]eclare that

the Military Provost's refusal to respond to the records within the mandatory statutory period is

an unlawful violation of FOIA[]" (*id*. ¶ 78); "[d]eclare that the Defendant failed to adequately

articulate a basis for the FOIA exemptions asserted by not complying with <u>Vaughn</u> v[.] <u>Rosen</u>[]"

(*id*. ¶ 79); "[d]eclare that the Defendant's assertions of exemptions claimed under b(2), b(6),

b(7)(c) and the Privacy Act exemption 55(a)(j)(2) in the redacted documents provided to

[Plaintiff] was unfounded[]" (*id*. ¶ 80); "[d]eclare that the Defendant violated FOIA failing to

conduct an adequate search for documents requested by [Plaintiff][]" (*id*. ¶ 81), and "[d]irect

Defendant to make all requested records available to [Plaintiff] unredacted without any further

delay and to explain the absence of certain documents and records that should have been

prepared under applicable regulations and procedures." *Id*. ¶ 82.

Bangoura v. United States Department of the Army                                    4

## II.  CONTENTS OF THE PARTIES

Defendant moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to

dismiss the instant action for failure to state a claim upon which relief can be granted or,

alternatively, pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment,

asserting that "good faith search efforts were employed to locate any records about [P]laintiff and

the investigation conducted on October 28, 2004 . . . and that 15 pages of responsive documents

were released[]" with redactions which are "justified under FOIA exemptions [5 U.S.C. § 552]

(b)(2), (b)(6), and (b)(7)(C)."  Defendant's Memorandum of Points and Authorities in Support of

Defendant's Motion to Dismiss or for Summary Judgment ("Defendant's Memorandum")

(Document No. 23-2) at 25; *see also id*. at 13-24.  In support of its motion, Defendant also

asserted that there is no cause of action created by an agency's failure to timely respond to a

FOIA request (*see id*. at 10-11), and that the obligation for an agency to provide a *Vaughn* Index

arises only upon the filing of a summary judgment motion.[2]  *Id*. at 11-12.

Plaintiff opposed Defendant's motion and cross-moved for summary judgment.[3]  Plaintiff

_____

[2]  Defendant also moved to dismiss Plaintiff's claims against the individual defendants.  *See id*. at 9-10; *see also* Amended Complaint ¶¶ 6-8.  However, on October 24, 2006, the undersigned granted Plaintiff's Motion for Leave to File a Second Amended Complaint (*see* October 24, 2006 Minute Order), in which Plaintiff did not allege any claims against individual government officials.  *See* Second Amended Complaint ¶ 6.  Thus, the undersigned finds Defendant's motion to dismiss Plaintiff's claims against the individuals named as defendants is moot.

[3]  Plaintiff, on July 17, 2006, initially opposed Defendant's motion with his own cross motion for partial summary judgment.  *See* Plaintiff's Cross Motion for Partial Summary Judgment (Document No. 25).  In it, Plaintiff moved for partial summary judgment with respect to Count One–Defendant's alleged "fail[ure] to respond to [Plaintiff's] FOIA request in the requisite statutory time period[,]"–and Count Two Defendant's alleged "fail[ure] to provide a *Vaughn* index as instructed by the precedent in this court."  *Id*. ¶¶ 1, 5.  Additionally, on the same date, Plaintiff moved to "stay [consideration of Defendant's] Summary Judgment [motion] . . . with regard to Count Four of the Second Amended Complaint [sic] pending [l]eave to [s]eek [d]iscovery."  *See* Plaintiff's Motion to Stay Summary Judgment Under 56(f) Pending Leave to Seek Discovery ("Plaintiff's 56(f) motion") (Document No. 26) at 1.

The undersigned granted Plaintiff's motion to stay summary judgment consideration and permitted Plaintiff to take limited discovery on the adequacy of Defendant's search.  *See* December 8, 2006 Memorandum Opinion and Order (Document No. 38).  At the conclusion of the limited discovery period, the undersigned permitted Plaintiff to

Bangoura v. United States Department of the Army                                    5

contended Defendant's failed to: (1) respond to [Plaintiff's] "initial FOIA request during the

mandatory 20 day statutory time period for FOIA requests[]" (Plaintiff's Memorandum of Points

and Authorities in Support of Plaintiff's Cross Motion for Summary Judgment ("Plaintiff's

Memorandum") (Document No. 41-3) at 4); (2) provide a *Vaughn* index or equivalent to

"identify the abundant and ambiguous redactions in a systematic manner[]" (*id*. at 6); (3) provide

a "sufficient basis to assert any exemptions" for the responsive information withheld pursuant to

5 U.S.C. § 552(b)(2), (b)(6), and (b)(7)(C) (*see id.* at 7-13); (4) conduct an adequate search

"'reasonably calculated' to produce relevant documents[]" (*see id*. at 16-23); and (5) to act in

good faith with respect to its searches and the production of documents.  *See id*. at 24-27.

        In the opposition to Plaintiff's motion for summary judgment, and the reply to Plaintiff's

opposition, Defendant maintained that (1) Plaintiff's Second Amended Complaint should be

dismissed for Plaintiff's failure to send his FOIA request to the proper address in accordance

with Army regulations (*see* Defendant's Opposition to Plaintiff's Cross-Motion for Summary

Judgment and Reply in Support of Defendant's Motion to Dismiss and for Summary Judgment

("Defendant's Response") (Document Nos. 42, 43) at 8-9); (2) there is no basis for declaratory

relief for an agency's failure to timely respond to a FOIA request, and that in any event, "Plaintiff

has received the relief to which he is entitled–["proceed[ing] to court to seek an order compelling

the agency to produce the requested records[]" (*id*. at 10)]–for such a violation[]" (*id*. at 11); (3)

it used a "coded index to satisfy the requirements of the *Vaughn* Index[,]" in the McGuire

---

file another cross motion for summary judgment and to supplement his opposition to Defendant's motion.  *See*
February 7, 2007 Minute Entry.  Plaintiff again moved for summary judgment (*see* Plaintiff Alseny Ben Bangoura's
Motion for Summary Judgment ("Plaintiff's Motion") (Document No. 41)) and incorporated his previous arguments
with respect to Counts One and Two.  Consequently, the undersigned denied Plaintiff's initial cross motion for
partial summary judgment as moot.  *See* March 18, 2009 Minute Order.

Bangoura v. United States Department of the Army                                    6

declaration and that the declaration explained the FOIA exemptions invoked in a manner that

was "clear, specific and unambiguous[]" (*id*. at 12)[4]; (4) it properly invoked the applicable FOIA

exemptions to withhold special agent sequence numbers, names of individuals and other

personally identifying information (*see id*. at 13-18); and (5) it "conducted a reasonable and

adequate search for responsive records by employing methods reasonably expected to produce

such information as evidenced by . . . declarations . . . and the deposition testimony [in the

record][.]" *Id*. at 21.

Plaintiff, in his reply, asserted that he was entitled to declaratory relief based on

Defendant's "well-established pattern of delayed and ineffectual responses to Plaintiff's FOIA

requests."  Defendant's Reply Brief in Support of Plaintiff's Cross Motion for Summary

Judgment ("Plaintiff's Reply") (Document No. 44) at 4-5.  Plaintiff also asserted that

Defendant's reliance on the McGuire Declaration as a *Vaughn* index or its equivalent was

misplaced.  *See* Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross

Motion for Partial Summary Judgment and Motion for Leave to Seek Discovery[5] ("Plaintiff's

Partial Summary Judgment Memorandum") (Document No. 30) at 12 ("The statement, 'all other

redactions . . . were of individual names and/or identifying information justified by Exemptions

b(6) and b(7)[(C)]' leaves [Plaintiff] guessing as to the applicable exemption.").   Moreover,

Plaintiff submitted that Defendant's invocation of FOIA exemptions 2, 6, and 7(C) "unjustly

restrict[ed]" his access to information relevant to his request, did not sufficiently

---

[4]  Defendant supported its redactions with a declaration prepared by Philip J. McGuire, the Director of the
United States Army Crime Record Center (USACRC) U.S. Army Criminal Investigation Division and supervisor of
the Freedom of Information and Privacy Act Division at USACRC.  McGuire Declaration ¶ 3.

[5]  *See* n.3, *supra*.

Bangoura v. United States Department of the Army                                    7

"demonstrate . . . a clear[] unwarranted risk to privacy[,]" and inadequately balanced the

"public's interest in disclosure . . . [and] applicable privacy interests to . . . relevant

information[.]"  Plaintiff's Reply at 6.  Plaintiff further submitted that Defendant "is not entitled

to assert exemptions under FOIA because Defendant continues to act in bad faith in responding

to Plaintiff's request."  *Id.*  Plaintiff contended that Defendant's search efforts were "inadequate,

unreasonable, and misleading[]" (*id.* at 9), given Defendant's failure to "follow leads to uncover

responsive documents" that were identified in the materials produced to Plaintiff.  *Id.* at 9-13.


## III.  STANDARD OF REVIEW

### A.  Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a pleading

for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint."  *Hammond v.

D.C. Record Ctr.*, 593 F. Supp. 2d 244, 247 (D.D.C. 2009) (citing *Browning v. Clinton,* 292 F.3d

235, 242 (D.C. Cir. 2002)).  "In evaluating a Rule 12(b)(6) motion to dismiss . . . the court must

construe the complaint in a light most favorable to the plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations."  *Citizens for

Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 210 (D.D.C. 2009)

(citing *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915

(D.D.C. 1994)).  When, on a Rule 12(b)(6) motion, "matters outside the pleading are presented to

and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56.  All parties shall be given reasonable opportunity to present all the material that is

Bangoura v. United States Department of the Army                                    8

pertinent to the motion."  Fed.R.Civ.P. 12(d); *see Williams v. Dodaro,* 576 F. Supp. 2d 72, 80

(D.D.C. 2008).

### B.  Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if

the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).  Material facts are those that "might affect the outcome of the suit under the

governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The party seeking

summary judgment bears the initial burden of demonstrating an absence of genuine issue of

material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Tao v. Freeh,* 27 F.3d 635,

638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court must draw

all reasonable inferences in favor of the non-moving party.  *Id.*

In addition, Local Civil Rule 7(h) provides:

> Each motion for summary judgment shall be accompanied by a statement
> of material facts as to which the moving party contends there is no genuine
> issue, which shall include references to the parts of the record relied on to
> support the statement.  An opposition to such a motion shall be
> accompanied by a separate concise statement of genuine issues setting
> forth all material facts as to which it is contended there exists a genuine
> issue necessary to be litigated, which shall include references to the parts
> of the record relied on to support the statement . . . **In determining a
> motion  for summary judgment, the court may assume that facts
> identified by the  moving party in its statement of material facts are
> admitted, unless such a  fact is controverted in the statement of
> genuine issues filed in opposition to  the motion.**

LCvR 7(h) (emphasis supplied); *see also* LCvR 56.1.

The District of Columbia Circuit has held that "[i]f the party opposing the motion fails to

comply with this local rule, then 'the district court is under no obligation to sift through the

Bangoura v. United States Department of the Army                                    9

record' and should '[i]nstead . . . deem as admitted the moving party's facts that are

uncontrovertedby the nonmoving party's Rule [LCvR 7(h)] statement.'"   *Securities and Exch.*

*Comm'n v. Banner Fund Int'l*, 211 F. 3d 602, 616 (D.C. Cir. 2000) (citation omitted).   The

District of Columbia Circuit "[has] explained . . . that the 'the procedure contemplated by the

[local] rule. . . isolates the facts that the parties assert are material, distinguishes disputed from

undisputed facts, and identifies the pertinent parts of the record.'"   *Burke v. Gould*, 286 F. 3d

513, 517 (D.D.C. 2002) (quoting *Gardels v. CIA*, 637 F. 2d 770, 773 (D.C. Cir. 1980)).   This

circuit has affirmed the grant of summary judgment where the nonmoving party failed to cite any

evidence in the record, and in the statement of genuine factual issues, "did not set forth specific,

material facts, but simply asserted, without citing evidence in the record, that there was a

disputed issue[.]" *Burke*, 286 F. 3d at 518 (quoting *Tarpley v. Greene*, 684 F. 2d 1, 7 (D.C. Cir.

1982)).


    *C.  Freedom of Information Act ("FOIA")*

    "FOIA provides a 'statutory right of public access to documents and records' held by

federal government agencies."   *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't

of Justice*, No. CIV.A.05-2078, 2009 WL 649699, at *1 (D.D.C. Mar. 16, 2009) (quoting *Pratt v.

Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).   FOIA requires that federal agencies comply with

requests to make their records available to the public, unless such "information is exempted

under [one of nine] clearly delineated statutory language." *Id*. (internal quotation marks

omitted); *see also* 5 U.S.C. § 552(a), (b).   A district court has jurisdiction to enjoin the agency

from withholding records and to order the production of any records improperly withheld from

Bangoura v. United States Department of the Army                                        10

the requester and to review *de novo* the withholding of information pursuant to an exemption.

*See* 5 U.S.C. § 552(a)(4)(B).  The agency has the burden to show that "each disputed withholding

or redaction [is] proper[.]"  *Judicial Watch of Florida v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6,

10 (D.D.C. 2000); *see also* 5 U.S.C. § 552(a)(4)(B) (citations omitted).  "In a FOIA case, a court

may award summary judgment solely on the basis of information provided by the agency in

[affidavits or] declarations when the [affidavits or] declarations describe 'the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'"  *Moore v. Bush*, No. CIV.A.07-107,

2009 WL 504623, at *3 (D.D.C. Feb. 23, 2009) (quoting *Military Audit Project v. Casey*, 656

F.2d 724, 738 (D.C. Cir. 1981)).  "Once a court determines that the affidavits [or declarations]

are sufficient, no further inquiry into their veracity is required."  *Judicial Watch Inc. v. Export-*

*Import-Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000).  However, a motion for summary judgment

should be granted in favor of the FOIA requester "[w]hen an agency seeks to protect material

which, even on the agency's version of the facts falls outside the proffered exemption[.]"

*Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info.*

*Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).


## IV.  DISCUSSION

*Defendant justifiably withheld exempted information*

   On November 15, 2004[6] and on several occasions thereafter, Plaintiff sought the

---

   [6]   In Count One of his Second Amended Complaint, Plaintiff sought a declaratory judgment that Defendant
failed to respond to his November 15, 2004 FOIA request "to [the] Military Police Unit of the Military District of

Bangoura v. United States Department of the Army                                    11

"production of any and all materials and information within the possession of the Military Police

Unit of the Military District of Washington ("Military Police Unit"), regarding [Plaintiff's] arrest

and detention . . . on October 28, 2004 at . . . the State Department Federal Credit Union in . . .

Washington, D.C.[.]"  Second Amended Complaint ¶¶ 1-2, 5.  Plaintiff also sought documents

that include "witness interviews at the credit union and any base banning orders issued by the

Police unit."  *Id*. ¶ 2.  In response to Plaintiff's November 15, 2004 FOIA request and his

subsequent inquires, Defendant located and produced fifteen pages of documents "regarding

[P]laintiff and the incident of October 28, 2004[,]" (Defendant's Response at 8) which

encompassed a "five-page final investigation report"; "two checks that [P]laintiff had been

attempting to cash at the time of his arrest"; "three pages of handwritten special agent's notes

---

Washington" within the statutory period of twenty days.  *See* Second Amended Complaint ¶ 74, 78; *see also* Plaintiff's Partial Summary Judgment Memorandum at 8 ("Plaintiff requests declaratory relief in the form of an order stating that Defendant failed to respond, reply or even acknowledge the FOIA request until over six months after the initial FOIA request and six months after [Plaintiff] filed suit.").  Defendant opposed Plaintiff's request, and moved to dismiss Count One contending that Plaintiff has received the remedy–to petition the court for release of the requested documents–for its failure to timely respond to Plaintiff's request.  Defendant's Memorandum at 11. Defendant argued that "[s]ince [P]laintiff has filed suit to enforce his FOIA request . . . there is no possible relief available . . . on Count 1."  *Id.*

      The undersigned finds that the FOIA does not create a cause of action for an agency's untimely response to a FOIA request.  The statute clearly provides a requester a remedy for an agency's non-compliance with its time limit provisions: a direct avenue to the district courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B); *see also Edmonds Institute v. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) ("[P]urpose of the FOIA deadline provisions is to allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents, at which point the court may then order the agency to respond to the request or review the request itself[.]'") (internal quotations marks and citation omitted).  Moreover, Plaintiff's reliance on *Swan View Coalition v. Dep't of Agric.*, 39 F. Supp. 2d 42, 46 (D.D.C. 1999) is entirely misplaced.  In *Swan View*, the court held that declaratory relief, in the context of FOIA requests, is limited to instances where a "defendant voluntarily ceases to engage in . . . allegedly illegal conduct" during the course of litigation, where a plaintiff challenges an "allegedly illegal agency policy and the future implication of that policy" or 'there exists some cognizable danger of recurrent violation.'"  *Swan View*, 39 F. Supp. 2d at 46 (citations omitted).  The facts of this action–Defendant's response to Plaintiff's initial FOIA request– without more, does not present a "cognizable danger of recurrent violation" or "an illegal agency policy."  *See also Public Employees for Environmental Responsibility v. U.S. Dep't of Interior*, No. CIV.A.06-182, 2006 WL 3422484, at *9 (D.D.C. Nov. 28, 2006).  Thus, Defendant's motion to dismiss Count One of the second amended complaint is granted.

Bangoura v. United States Department of the Army                                                    12

regarding [Plaintiff] and his alleged offenses";  "CID 'Agent's Activity Summary' for October 28

and 29[,]" and "a 'Daily Staff Journal or Duty Officer's Log . . . detail[ing] the activities of the

military police office on October 28, 2004."  Defendant's Memorandum at 2-4.  Defendant

maintained that a reasonable and adequate search has been performed and that "all reasonably

segregable, non-exempt information has been released."  Defendant's Response at 12, n.11.

Defendant contended that it properly withheld portions of these documents pursuant to 5 U.S.C.

§ 552(b)(2), (6), and (7)(C).[7]  *See* Defendant's Memorandum at 13-24.  Thus, the issue before

the court is whether, as a matter of law, Defendant is entitled to rely on the stated FOIA

exemptions.[8]

---

[7]  Defendant produced, without redactions, copies of the two checks Plaintiff allegedly attempted to cash on October 28, 2004.

[8]  In Count Two of his Second Amended Complaint, Plaintiff sought a declaratory judgment that Defendant "failed to adequately articulate with particularity a basis for the FOIA exemptions asserted[]" and that "[a] [*Vaughn*] index . . . was not provided[.]"  Second Amended Complaint ¶ 75, 79; *see also* Plaintiff's Memorandum at 6 ("At no point before or after [the] filing of this action, and even after the limited Discovery period, did Defendant provide a *Vaughn* index or suitable equivalent identifying the basis for its privilege claims.").  As an initial matter, Defendant was under no obligation to provide Plaintiff with a *Vaughn* Index before the "filing of this action[.]" *See Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir. 1973); *see also Schwarz v. U.S. Dep't of Treasury*, 131 F.Supp. 2d 142, 147 (D.D.C. 2000) ("Plaintiff is under the misapprehension that an agency responding to a . . . FOIA request provide a 'search certificate and a 'Vaughn' index. . . . Plaintiff is advised that there is no requirement that an agency provide a 'search certificate' or a 'Vaughn' index on an initial request for documents.  The requirement for detailed declarations and Vaughn indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court.").  Plaintiff contended that the McGuire Declaration "utterly failed to identify the abundant and ambiguous redactions in a systematic manner[,]" and that "Defendant provided no explanation as to how the deletions correlate specifically and unambiguously to the corresponding exemptions."  Plaintiff's Memorandum at 6.  Defendant maintained that it "used a coded index to satisfy the requirements of the Vaughn index[,]" and that the detail of the McGuire Declaration "is clear, specific, and unambiguous."  Defendant's Response at 12.

The undersigned finds that the McGuire Declaration contains an adequately detailed justification for each claimed exemption and an explanation of the redacted information.  Further, the undersigned was guided by the reference to the claimed exemptions clearly denoted at the bottom of each disclosed document and the corresponding explanation of the withheld information in the McGuire Declaration.  *See* McGuire Declaration ¶ 33 ("Exemption b(2) was asserted to protect special agent sequence numbers and was asserted in two instances: (1) on page one of Exhibit A, Report of Investigation, 'INVESTIGATED BY' and, (2) on page two of Exhibit A, 'REPORT PREPARED BY.'"); *see also* McGuire Declaration ¶¶ 22, 28-30.  Based on the review of the Defendant's Declaration and an independent review of the redacted documents, the undersigned finds that Defendant sufficiently

Bangoura v. United States Department of the Army                                                13

### (1)  Exemption 2

At issue in this action are two instances in which Exemption 2 was invoked to justify

non-disclosure.  Exemption 2 of the FOIA exempts from mandatory disclosure records "related

solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  "The

phrase 'personnel rules and practices' has been interpreted to include not only 'minor

employment matters' but also 'other rules and practices governing agency personnel.'"

*Kurdyukov v. U.S. Coast Guard*, 578 F. Supp. 2d 114, 124 (D.D.C. 2008) (quoting *Crooker v.*

*Bureau of Alcohol, Tobacco and Firearms*, 670 F. 2d 1051, 1056 (D.C. Cir. 1981) (*en banc*)).

Exemption 2 applies when an agency meets two criteria.  "First, such information must be 'used

for predominately internal purposes.'  Second, the agency must show either that 'disclosure may

risk circumvention of agency regulation,' or that 'the material relates to trivial administrative

matters of no genuine public interest.'"  *Id*. at 124-25 (citations omitted); *see also Amuso v. U.S.*

*Dep't of Justice*, No. CIV.A.07-1935, 2009 WL 535965, at *6 (D.D.C. Mar. 4, 2009).  If the

information used is for predominantly internal purposes "the disclosure of which would risk

circumvention of agency statutes [such information is] . . . protected by the so-called 'high 2'

exemption."  *Id.* at 125 (quoting *Schiller v. Nat'l Labor Relations Bd.*, 964 F. 2d 1205, 1207

(D.C. Cir. 1992)).  However, if the material at issue relates to trivial administrative matters of no

genuine public interest, it is deemed "low 2" exempt material.  *Id.*  "Low 2" exempt information

includes "file numbers, initials, signature and mail routing stamps, references to interagency

transfers, and data processing references."  *Id.* (quoting *Scherer v. Kelley*, 584 F. 2d 170, 175-76

provided a *Vaughn* index equivalent that sufficiently articulated the claimed exemptions and the information
withheld, and disclosed all reasonably segregable, nonexempt information.  Accordingly, Defendant's motion for
summary judgment as to Count Two of the Second Amended Complaint is granted.

Bangoura v. United States Department of the Army                                    14

(7th Cir. 1978)).

Defendant invoked Exemption 2 in two instances to "protect special agent sequence

numbers[]" which are used "to identify agents when they perform a myriad of administrative

functions (writing reports, accessing CID information systems, etc.)."  Declaration of Phillip J.

McGuire ("McGuire Declaration") (Document No. 23-3), ¶ 22; *see also* McGuire Declaration ¶

33 (Defendant redacted sequence numbers listed under "INVESTIGATED BY" and

"REPORTED BY" on page one and two of Exhibit A, CID Report of Investigation).  The

Defendant maintained that the redacted sequence numbers should be exempted under a hybrid of

the "high 2" and "low 2" categories, as the "sequence numbers or internal codes have internal

significance only," and are used as "part of the security measures used to verify that authorized

agents are accessing CID information systems."  *Id*. at 19; *see also* McGuire Declaration ¶ 23.

Defendant further contended that disclosure of these sequence numbers "could open the door to

unauthorized access or impersonation of agents which could allow 'unauthorized individuals to

access sensitive information within the CID systems.'"  *Id.*

Plaintiff asserted that the sequence numbers are "neither routine nor trivial, but directly

bear[s] on this case's central issues – Defendant's apparently wilful obfuscation and failure to

conduct a reasonable search in response to Plaintiff's FOIA requests."  Plaintiff's Memorandum

at 8.  Plaintiff's assertion is premised on his contention that the redacted sequence numbers could

"identify or relate to Government personnel who had knowledge of Plaintiff's arrest and

detention" which could determine "whether additional responsive information exists and whether

the meager information produced to date should have been located and produced sooner."  *Id*.

Plaintiff also argued that Defendant did not demonstrate that disclosure of the sequence numbers

Bangoura v. United States Department of the Army                                          15

"would 'significantly risk circumvention of agency regulations or statutes." *Id*.  Instead, Plaintiff

insisted that Defendant "identif[ied] no substantial risk" and based its claim of exemption on

"unfounded speculation[.]" *Id*.

The undersigned finds Plaintiff's assertions unavailing. The withheld information–special

agent sequence numbers–is within the bounds of the internal workings of the agency which

properly satisfies the criteria of information exempted for usage which is "predominately

internal."  As noted in *Schoenman*, "material is considered predominately internal where it 'was

designed to establish rules and practices for agency personnel and . . . involve[s] no secret law of

the agency.'"  *Schoenman v. FBI*, 575 F. Supp. 2d 136, 154 (D.D.C. 2008) (internal quotation

marks and citations omitted).   In the instant action, the sequence numbers withheld related to the

internal practice of the agency to identify the users accessing its information systems.  Plaintiff

cannot overcome the proposition that such numbers do not embody any "'secret law' of the

agency" or [an] "attempt to modify or regulate public behavior."  *Crooker*, 670 F. 2d at 1073-

1075.  Moreover, the withheld material–special agent sequence numbers–"need not be actual

'rules and practices' to qualify under Exemption 2, as the statute provides that matter 'related' to

rules and practices is also exempt."  *See Kurdyukov*, 578 F. Supp. 2d at 124 (citing *Schwaner v.

Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990)).   In this instance, the sequence

numbers are tools for the special agents to perform their duties.  Moreover, the sequence numbers

are akin to the use of initials or signatures which is the type of information contemplated for non-

disclosure under the 'low 2' exemption.  *See id.* at 125 (The low 2 category includes exemptions

for "file numbers, initials, signature and mail routing stamps, references to interagency transfers,

and data processing references."); *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 83 F.

Bangoura v. United States Department of the Army                                16

Supp. 2d 105, 110 (D.C. Cir. 1999) (information properly withheld pursuant to the "low 2"

exemption encompasses trivial administrative data such as "file numbers, mail routing stamps,

data processing notations and other administrative markings.").  Plaintiff contended that

disclosure of the sequence numbers would have allowed him access to potential information

relating to his arrest and detention.  However, Plaintiff has not proffered any evidence to raise a

genuine issue of material fact that the sequence numbers are of genuine interest to the public

generally.  For these reasons, the undersigned finds that Defendant properly withheld the special

agent sequence numbers as the information is "used for predominately internal purposes" and

"relates to trivial administrative matters of no genuine public interest."

> (2)  *Exemption 6*

Defendant invoked the two provisions of the FOIA which protect personal privacy

interests, Exemption 6 and 7(C), to withhold the balance of the information redacted within the

released documents.  Defendant's Memorandum at 19-24; *see* Defendant's Response at 16-17

("[T]he identities of CID special agents and military police, third parties mentioned in the

investigation report, and third party witnesses have been properly withheld, based on FOIA

Exemptions 6 and 7(C), from the CID report of investigation, agent's notes, Agent's Activity

Summary, and Daily Staff Journal or Duty Officer's Log released to Plaintiff.");  *see also*

McGuire Declaration ¶¶ 28-32.  The undersigned will address each party's contentions with

respect to exemption 6.[9]

Exemption 6 of the FOIA permits governmental agencies to withhold disclosure of

---

[9]  *See*, n.12, *infra.*

"personnel and medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The analysis of whether

Defendant properly withheld information pursuant to Exemption 6, requires the court to first

determine whether the withheld information is "contained in personnel, medical or 'similar'

files." *Wash. Post Co. v. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (1982).  In 1982,

the Supreme Court adopted a broad construction of the term "similar files," holding that the term

is "intended to cover detailed Government records on an individual which can be identified as

applying to that individual." *Concepcion v. F.B.I.*, No. CIV.A.07-1766, 2009 WL 794484, at *13

(D.D.C. Mar. 27, 2009) (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602

(1982)).  The court must next determine whether disclosure of the withheld information serves as

a clearly unwarranted invasion of personal privacy, a consideration that requires the court to

"balance the private interest involved (namely, the individual's right of privacy) against the

public interest (namely, the basic purpose of the Freedom of Information Act, which is to open

agency action to the light of public scrutiny)[]" that would be advanced by disclosing it.

*Bigwood v. U.S. Agency for Intern. Development,* 484 F. Supp. 2d 68, 75 (D.D. C. 2007)

(internal quotations marks and citations omitted).  The public interest under FOIA is limited to

that which "'sheds light on an agency's performance of its statutory duty' in order to inform the

citizens 'about what their government is up to.'" *S.D. Edmonds v. FBI*, 272 F. Supp. 2d 35,52

(D.D.C. 2003) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489

U.S. 749, 773 (1989)).

Pursuant to Exemption 6, Defendant withheld the name or identities of (1) CID special

agents and Military Police officers that initiated, investigated or supervised the investigation of

Bangoura v. United States Department of the Army                                    18

the October 28, 2004 incident involving Plaintiff, (2) third parties that were interviewed by the

investigation officials and (3) third parties mentioned in the disclosed documents that either

received a copy of the report of investigation, recorded information regarding police activity that

occurred during various shifts on October 28, 2004, or that "were not of investigative interest to

CID."[10]  *See* McGuire Declaration ¶¶ 28-30; *see also* McGuire Declaration Exhibits (Document

No. 23-3) at 17-29.  Plaintiff did not dispute Defendant's showing that the redacted information

qualifies as a "personnel, medical or similar file" as contemplated by Exemption 6.  *See*

Plaintiff's Memorandum at 11 ("Here, even acknowledging that the information contains

personal information . . . .").   However, it is clear that Defendant withheld from the investigation

materials identifying personal information with respect to its personnel.  Moreover, the redacted

names of third parties, whether they are witnesses or individuals unrelated to the October 28,

2004 investigation involving Plaintiff, falls within the broad construction of the term "similar

files" as contemplated by Exemption 6 in that the redacted information applies to particular

individuals.  Thus, the Defendant meets the threshold requirement for Exemption 6 protection.

Indeed, "[t]he threshold is 'fairly minimal,' such that 'all information which applies to a

particular individual is covered by Exemption 6, regardless of the type of file in which it is

contained."  *Concepcion v. F.B.I.*, No. CIV.A.07-1766, 2009 WL 794484, at *13 (D.D.C. Mar.

27, 2009).

        Having met the threshold requirement, the court next turns its attention to the "balancing

of the individual's right of privacy against the preservation of the basic purpose of the Freedom

---

[10]  Defendant contended that only one entry, entry 35, on the "Daily Staff Journal or Duty Officer's Log"
relates to the Plaintiff and the investigation on October 28, 2004.  *See* McGuire Declaration ¶ 15.

Bangoura v. United States Department of the Army                                    19

of Information Act to open agency action to the light of public scrutiny." *Amuso*, 2009 WL

535965, at *7 (internal quotation marks and citations omitted).    In support of its assertion of the

privacy interests involved, Defendant contended that its agents and military police "conduct

official inquiries into various criminal and national security cases . . . which constitute

reasonable, but nonetheless serious intrusions into peoples' lives[,]" and that the publicity from

the disclosure of their names "may seriously prejudice their effectiveness in conducting other

investigations" or subject them to "harass[ment]" and "animosity[.]"  McGuire Declaration ¶ 28.

Defendant further contended that its law enforcement personnel, "as individuals" require

protection from "unnecessary, unofficial questioning as to the conduct of this or other

investigations[.]"  *Id*.  Moreover, Defendant asserted that obtaining information in an interview

from individuals regarding possible criminal activities "is one of the most productive

investigative tools utilized by law enforcement agencies[,]" and that "[t]he largest roadblock in

successfully obtaining the desired information . . . is fear by the interviewee that his [or her]

identity will possibly be exposed[.]"  *Id.* ¶ 31.  Defendant contended that it withheld the names of

"third party interviewees [that] provided CID with valuable information concerning possible

criminal activities[,]" as such exposure could result in that person being "harassed, intimidated,

or threatened with legal or economic reprisal or possible physical harm."  *Id*.  Defendant also

maintained that "[t]he information provided by the interviewees were processed in a effort to

release [to the Plaintiff] as much information as possible[.]"  *Id.* ¶ 32.  Likewise, Defendant

contended that third parties that were "merely mentioned in the responsive criminal investigative

file . . . who were not of investigative interest to CID . . . [or] considered subjects of possible

criminal activity, . . . victims or witnesses[]" maintain "legitimate privacy interests in not having

Bangoura v. United States Department of the Army                                20

information about them disclosed." *Id.* ¶ 29.  Such disclosure "could subject these individuals

and their family members to possible harassment or criticism and focus derogatory inferences

and suspicion on them." *Id*.

Plaintiff disputed Defendant's explanation of its withholdings, and argued that "the

public's significant interest [is] in understanding the nature and scope of Defendant's inability to

reasonably respond to Plaintiff's FOIA requests[.]"  Plaintiff's Memorandum at 11.  However,

Plaintiff's assertion of a public interest, in this instance, is entirely misplaced: a fair assessment

of Plaintiff's claim of public interest is that it is predicated on Plaintiff's concern with respect to

the reasonableness and adequacy of Defendant's search, rather than on the merits of whether it

was proper for the defendant to withhold information pursuant to exemptions 6 and 7.  *See id*. at

9 ("Neither exemption applies here, as Defendant identifies no privacy interest sufficient to

shield Defendant's incompetent response to Plaintiff's FOIA requests from the light of public

scrutiny."); *see also id*. at 11 ("This case centers on the dereliction of Defendant's fundamental

responsibilities under FOIA, and its chronically incompetent search for documents by failing to

identify persons with knowledge and records generated by or relating to those persons and their

knowledge of Plaintiff.").

Additionally, Plaintiff contended that

> [E]ven acknowledging that the information contains personal
> information, Defendant identifies no privacy interest which
> outweighs the public's interest in disclosure of the redacted
> information, which clearly would shed great light on Defendant's
> performance (or as seen throughout this case, lack of performance)
> . . . of its statutory duties, by identifying those persons who had
> knowledge of records involving Plaintiff and who properly were
> the best sources of responsive information regarding Plaintiff's
> FOIA request.

Bangoura v. United States Department of the Army                                          21

*id*. at 11.  However "[i]t is the requestor's obligation to articulate a public interest sufficient to

outweigh an individual's privacy interest, and the public interest must be significant."  *Amuso*,

2009 WL 535965, at *7 (citing *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172

(2004)).  Plaintiff cited no authority to support disclosure of such information to help him

determine whether Defendant properly fulfilled its search obligations pursuant to the FOIA.[11]

*See* Plaintiff's Memorandum at 12 ("The redacted information at issue is central to determining

what information may remain uncovered, or what avenues the Defendant should have pursued to

conduct a reasonable FOIA search.").  It is the privacy interest of the individuals, not the agency,

which is at stake if personal information is disclosed.  *Amuso*, 2009 WL 535965, at *7 (citations

omitted).  Thus, the court concludes that Defendant properly withheld the names and/or identities

of the redacted law enforcement personnel or third parties interviewed during the investigation of

the October 28, 2004 incident or mentioned in the responsive documents under Exemption 6.[12]

For these reasons, the undersigned finds that Plaintiff failed to carry its burden of asserting a

---

[11]   Plaintiff insisted that "this case teems with evidence that Defendant has acted in bad faith through a persistent pattern of strategic 'errors', obfuscation, and inaction in response to Plaintiff's legitimate FOIA requests, which attempt[s] to help determine whether Plaintiff was the victim of racial profiling by the Government." Plaintiff's Memorandum at 13.  The undersigned finds Plaintiff's arguments of such "evidence" unavailing and finds no basis to find Defendant acted in bad faith, in this instance, in which Defendant searched, located and produced the responsive documents in this action.  Moreover, Plaintiff's assertion, in this instance, denotes the flaw in his argument.  The only interest proffered by Plaintiff, is a personal one, which is "irrelevant to the FOIA, which by law is sensitive only to a public interest."  *Moore v. United States*, No. CIV.A.08-223, 2009 WL 691120, at *3 (D.D.C. Mar. 17, 2009) (citation omitted).

[12]   Defendant withheld the controverted information on the basis of Exemption 6 and 7(C).  Because the court has found that the information was properly withheld pursuant to Exemption 6, there is no need to make a determination regarding the applicability of Exemption 7(C).  *Id*. (citing *Simon v. Dep't of Justice*, 980 F.2d 782, 785( D.C.Cir. 1994)).  Defendant admitted that the "United States Army Criminal Investigation Command is the felony law enforcement agency of the U.S. Army[]" and that CID produced the reports and notes released to Plaintiff as "part of a criminal investigation conducted during the normal course of law enforcement duties."  McGuire Declaration ¶ *25*.  Plaintiff did not contest these assertions.  The privacy interests asserted by Defendant as explained above is sufficient to warrant the withholding of the names and identities of the law enforcement agents and third parties involved in CID's investigation.

Bangoura v. United States Department of the Army                                    22

public interest sufficient to outweigh an individual's privacy interest.


## V.  CONCLUSION

Upon consideration of the motions, oppositions, replies and the entire record herein, and

for the reasons set forth herein, it is this 8th day of April, 2009,

**ORDERED,** *nunc pro tunc* to March 31, 2009, that Defendant['s] Motion to Dismiss or

in the Alternative for Summary Judgment (Document No. 23) is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Document No.

41) is **DENIED**.[13]


                                                        /s/
                        _____        _____
                                              DEBORAH A. ROBINSON
                                              United States Magistrate Judge

---

[13]   After the completion of briefing on the parties' dispositive motions, Plaintiff, on two occasions directed
the court to "supplemental legal authority" he contended was in support of his motion.  *See* Document Nos. 48, 52.
The undersigned finds that the authority is irrelevant to the proper consideration of the disputed issues in the parties'
pending motions.